## COOS HEAD TIMBER COMPANY v. COMMISSION

Joseph McKeown, Coos Bay, Oregon, represented plaintiff.

Theodore W. de Looze, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for plaintiff rendered March 27, 1968.

EDWARD H. HOWELL, Judge.

This case involves the true cash value of plaintiff's property known as the Empire pulp and sawmill plant in Coos County for the tax year 1965-66.

At the trial the parties agreed on $85,200 as the value of the real property but disagreed as to the true cash value of the improvements which consist of a sawmill and pulp plant.

The Coos County Assessor, based on an appraisal by the industrial section of the tax commission, valued the improvements as of January 1, 1965, at $1,943,050. The plaintiff appealed to the Coos County Board of Equalization which reduced the value to $1,115,480. The assessor appealed to the tax commission and the

latter reinstated the value at $1,943,050. Plaintiff appealed to this court, contending for the value as found by the board of equalization.

The values used by the assessor for the two previous tax years, like 1965, were determined by the State Tax Commission. For 1963 and 1964 the assessor valued the plaintiff's land and improvements at approximately one million dollars, which was the amount plaintiff paid Scott Paper Company for the total property in December, 1962.

At the trial the tax commission defended the use of the original purchase price for the 1963 and 1964 valuations on the grounds that they did not know whether plaintiff was going to operate the pulp plant or salvage it. The increase in valuation on the improvements to $1,943,050 for January 1, 1965, was explained on the basis that time had shown the pulp mill was a going concern. The defendant used the replacement cost less depreciation approach for the January 1, 1965, valuation.

According to the evidence the plantiff's improvements were constructed in 1928. The complex was shut down from 1930 to 1934. It was reopened in 1935 by Coos Bay Pulp Company, sold to Scott Paper in June, 1940, and operated by Scott until the December, 1962, sale to plaintiff. There was testimony that the plaintiff's operation is considered unique because it is a combination pulp plant and sawmill. The pulp plant is the smallest in the state, extremely antiquated, but does have dock facilities.

Plaintiff had been leasing the sawmill from Scott Paper Company prior to the December, 1962, purchase of the entire complex. Before the purchase by plaintiff Scott had given an oral option covering the saw-

mill, pulp plant and some timber to Hudson Pulp and Paper Company. The sales price under the option was two and one-half million dollars which included the timber valued at one and one-half million dollars. When Hudson Pulp and Paper did not exercise the option plaintiff purchased the sawmill and pulp plant including the real property, for one million dollars. Later a portion of the timber was bought by plaintiff and the balance purchased by others, including Georgia-Pacific corporation.

In reinstating the $1,943,050 valuation on the improvements the defendant's opinion and order recites that the Coos County Assessor "used the salvage value reflected by the sale [Scott to plaintiff] as the basis for value as of January 1, 1963 and January 1, 1964, after consulting with the Industrial Section of the State Tax Commission." The order also stated that for 1965 the commission's industrial appraiser "considered that a salvage value for the property was no longer appropriate in view of the fact that the taxpayer had kept the plant continuously operating since March of 1963." The evidence produced at the trial does not support the finding that the property was sold by Scott to plaintiff on a salvage basis.

According to the testimony the plant had been offered to Hudson Pulp and Paper Company for the same price paid by plaintiff; other buyers had looked at the property before it was sold to plaintiff and the sale to plaintiff was an arm's length transaction between a willing buyer and a willing seller. The sawmill had always been operating prior to the sale to plaintiff and the pulp plant was operated on a full scale basis by Scott until September, 1962, reopened by plaintiff in March of 1963, and has been operated

continuously since that time. Consequently it was in operation not only on January 1, 1965, but also on January 1, 1964, when the property was valued on the basis of the sales price because the commission was uncertain as to whether the plaintiff planned to operate the pulp plant or salvage it.

■ In *Portland Canning Co. v. Tax Com.*, 241 Or 109, 404 P2d 236 (1965), the Oregon Supreme Court held that if a market exists property must be valued using the market data approach instead of the replacement cost less depreciation approach.

The plaintiff has sustained the burden of proof. The purchase price of one million dollars was reached in an arm's length transaction. In this instance the purchase price is more persuasive than the replacement cost less depreciation approach to true cash value.

As the parties have agreed upon the value of the land at $85,200, that amount should be deducted from the purchase price leaving a balance of $914,800 to be allocated to the improvements. The plaintiff installed a chipper in 1963 at a cost of $100,000 and a hydraulic barker in 1964 for $300,000; however, plaintiff also disposed of some old equipment from the property. The court finds the true cash value of the subject improvements as of January 1, 1965, to be $1,115,480.