Argued September 11, reversed and remanded October 25, 1973

## KEM, *Appellant, v.* DEPARTMENT OF REVENUE, *Respondent.*

514 P2d 1335

*Barton C. Bobbitt,* Portland, argued the cause for appellant. With him on the briefs were Richard V. Bayless, and Bauer, Murphy, Bayless & Fundingsland, Portland.

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Theodore W. deLooze, Chief Tax Counsel, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

HOWELL, J.

This appeal, from a decree of the Oregon Tax Court, involves a determination of the true cash value of real property owned by plaintiff in Washington County. The Department of Revenue found the true cash value of the land and improvements to be $1,247,-500 as of January 1, 1970. The Tax Court affirmed the Department of Revenue, and plaintiff appeals.

The subject real property consists of a shopping center known as the Cedar Hills Shopping Center and a gasoline service station. The various stores and offices in the shopping center are being operated by lessees of the owner.

Plaintiff purchased the property on April 1, 1969, from a subsidiary of Commonwealth, Inc., the original developer and operator of the property. The purchase price paid by plaintiff, $775,000, included a parcel of land which was subject to an option to purchase by the lessee of the property. The lessee exer-

cised the option at a sale price of $125,000, leaving plaintiff with a net cost of $650,000 for the subject property.

At the trial, the appraiser for Washington County testified that the value of the land was $546,700 and, using the income approach, the value of the improvements was $700,800, for a total of $1,247,500.

The plaintiff contends that the market value of the property is $650,000, which is the sales price paid by plaintiff in April, 1969. We agree.

In 1966, Commonwealth, Inc., the owner of the property as well as other commercial property in western Oregon, employed an experienced real estate appraiser to determine the market value of the property. Later, in 1968, Commonwealth decided to sell the property, and the same appraiser again appraised the property for sale purposes. Using the income approach, he arrived at a market value of between $600,000 and $650,000, excluding the property which was sold under the option to the lessee. The appraiser testified that the rentals under the leases were economical and found no change in the market value of the property between the date of his appraisal and the assessment date of January 1, 1970.[1]

After the appraisal, the property was offered for sale and was examined by numerous prospective purchasers, including realtors and investors. The property was eventually sold to plaintiff in April, 1969.

■ Real property is assessed at its true cash value. True cash value means market value as of the assess-

---

[1] The expertise of the appraiser was conceded by the defendant and expressly noted by the Tax Court.

ment date. ORS 308.205. Market value is defined in the Department of Revenue's Regulations as:

"Market value as a basis for true cash value shall be taken to mean the amount of money or money's worth for which property may be exchanged within a reasonable period of time under conditions where both parties to the exchange are able, willing and reasonably well-informed." Regulation R 308.-205-(A)1.a.

2. The various approaches to valuation, market data, cost, or income, are only the vehicles used to determine the ultimate fact—market value. If a market exists, the property should be valued by using the market data approach. *Portland Canning Co. v. Commission,* 1 OTR 600 (1964), aff'd 241 Or 109, 404 P2d 236 (1965).

■ A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value. *Coos Head Timber Co. v. Commission,* 3 OTR 201 (1968), aff'd 255 Or 3, 463 P2d 569 (1970); *Coos Head Timber Co. v. Commission,* 3 OTR 143 (1967), aff'd 255 Or 1, 463 P2d 569 (1970); *Springfield Lbr. Mills v. Commission,* 3 OTR 147 (1967). The rule is not unique to ad valorem tax cases and is also applied in eminent domain proceedings to determine the market value of the property being taken.[2]

---

[2] 4 Nichols on Eminent Domain 12-115, 12-116, § 12.311[1] states:

"When a parcel of land is taken by eminent domain, the price which the owner paid for it when he acquired it is one of the most important pieces of evidence in determining its

■ In using the income approach to market value, the defendant's appraiser contended that the rentals being received by plaintiff were less than economic rent—the actual market value for the rents under the lease. It is not necessary for us to discuss the various leases nor attempt to determine whether the rentals were economic, because we believe that the sales price of $650,000 represented the market value of the property. We emphasize that a recent sale of the subject property is not necessarily determinative of market value and does not foreclose other methods of valuation, but under the circumstances of this case we believe it is more conclusive of value than the approach used by defendant's appraiser. Moreover, if we were to accept defendant's valuation it would mean that Commonwealth, experienced in the mortgage service business and the owner of various commercial centers, acting on the advice of a highly experienced appraiser, sold one of its shopping centers for approximately one-half of its market value. On the contrary, the evidence establishes a voluntary, arm's length sale between knowledgeable parties at a price of $650,000 a short time before the assessment date of January 1, 1970. We accept that amount as the market value of the property.

Reversed and remanded with directions to enter a decree in accordance herewith.

---

present value. However, this assumes that the sale was recent, was a voluntary transaction between parties each of whom was capable and desirous of protecting his own interests, and that no change in conditions or market fluctuation in values has occurred since the sale. * * *"