## IN THE OREGON TAX COURT

Daniel H. SKERRITT
and Irina S. Skerritt

*v.*

## DEPARTMENT OF REVENUE

## MULTNOMAH COUNTY,
Division of Assessment and Taxation,
*Intervenor*

(TC 3093)

Daniel H. Skerritt represented plaintiffs.

Sandra N. Duffy, Multnomah County Assistant Counsel, represented intervenor.

Decision for defendant rendered October 24, 1991.

**CARL N. BYERS, Judge.**

Plaintiffs appeal the true cash value of their residence for January 1, 1990. The county intervened and defended.

The subject property is located in northwest Portland in a desirable neighborhood. The home is situated on an 11,900 square foot lot above street level and backing onto a wilderness park. The large lot easily accommodates the home,

a detached two-car garage, driveway and a yard. The home was originally built in 1904. It has been updated to a limited extent over the years and is now in average condition. It is attractive and has a limited view of the city and mountains.

Plaintiffs' assessed value was increased from $154,700 in 1989 to $243,600 in 1990. Plaintiffs appealed this increase to the board of equalization, which reduced the assessed value to $235,000. After hearing, the Department of Revenue affirmed that value and plaintiffs appealed to this court.

Plaintiffs built their case on the value established by their bank. Mr. Skerritt testified that in late 1989 he negotiated refinancing of the mortgage on the property. Plaintiffs' bank had the property appraised. The appraiser's report indicated a value of $200,000. However, plaintiffs wanted to borrow the maximum amount possible to provide funds for home improvements. Plaintiffs negotiated with the bank and tried to get the appraisal increased. They were unsuccessful. Mr. Skerritt emphasized the point that plaintiffs are not relying on the bank appraisal. Rather, they rely on their arm's-length transaction with the bank. Mr. Skerritt believes that the negotiated loan, like an arm's-length sale, is the best evidence of market value. Plaintiffs submitted documents to establish the basis for the bank valuation and their appeal.

Intervenor's evidence consisted of its appraiser's testimony. The appraiser did a market comparison approach using four comparable sales,[1] three of which were within three blocks of the subject. The appraiser adjusted the comparable properties for view, lot size, size of the living areas and other relevant features. After all adjustments, he found the comparable sales indicated a range in value of from $260,000 to $270,000 for the subject. His opinion was that the subject property had a true cash value of $260,000.

■ Plaintiffs' reliance upon the arm's-length transaction with the bank is misplaced. The statutes require

---

[1] Curiously, the appraiser did not use as one of his comparables the sale of a house next door to the subject. That sale occurred only four months before the assessment date. The house is very similar to the subject. An earlier appraisal by Multnomah County gave it an adjusted value of $235,900.

property to be valued and assessed at 100 percent of its true cash value. ORS 308.232. True cash value is defined as:

"True cash value of all property, real and personal, means the *market value* of the property as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205. (Emphasis added.)

The department's administrative rule contains a standard definition of fair market value.[2] Plaintiffs' bank loan transaction does meet some of the conditions of that definition. For example, the bank loan was an arm's-length transaction, negotiated between knowledgeable parties, neither of which was under undue compulsion. Nevertheless, the transaction is not evidence of market value. It is evidence of loan value.

It must be recognized that financing involves different economic principles, considerations and motivations than does a sale or exchange transaction. Appraisals for purposes of financing may reflect something other than true cash value. *See Encyclopedia of Real Estate Appraising* 1097 (E. Friedman, ed., 3d ed 1978). Refinancing may even differ in terms and values from original financing.

The test of true cash value is value in exchange. That test requires the property to be exposed on the market for a reasonable period of time. Negotiating with one bank or even several banks is not the same as exposing property to the marketplace. Bank negotiations for loans and financing are conducted in private and usually without competitive bidding. Offering property in the marketplace for sale subjects the property to open bids and negotiations on several fronts simultaneously.

Consequently, the court cannot give significant weight to a bank's loan value. It is not equivalent to a sale in

---

[2]

"Market Value as a basis for true cash value shall be taken to mean the most probable price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time and financing typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed." OAR 150-308.205-(A)(1)(a).

the marketplace and, therefore, does not carry the persuasive weight that a sale does. *Kem v. Dept. of Rev.*, 267 Or 111, 514 P2d 1335 (1973).

Based upon his analysis of the comparable sales, intervenor's appraiser formed an opinion that the subject property had a true cash value of $260,000. Since the value established by the board of equalization and affirmed by the Department of Revenue is $235,000, intervenor's position would result in an increase in the assessed value. While the court is authorized to increase the value, it is not convinced that such is justified in this case.

Intervenor did not refute plaintiffs' evidence of shifting land which caused damage to the improvements. Likewise, Mr. Skerritt testified as to some specific poor conditions, such as the old windows, which intervenor did not contest. Finally, in reviewing intervenor's appraisal, there is a lack of specific data or calculations to support adjustments for lot size and view. After considering all of these factors, the court has determined the evidence is insufficient to merit increasing the assessed value.

Based on the above, the court finds the true cash value of the subject property as of January 1, 1990, was $235,000. Judgment will be entered sustaining defendant's Opinion and Order No. 90-1522. Costs to neither party.