DECISION
Plaintiffs appeal the Board of Property Tax Appeals (BOPTA) Order dismissing their petition and allege that Defendant's determination of their property's real market value is incorrect for tax year 2007-08. A trial was held in the offices of Clackamas County Assessment and Taxation on Thursday, November 20, 2008. Rory Taylor (Taylor) appeared on behalf of Plaintiffs. Fred Dodd (Dodd), Appraiser II, Clackamas County Assessment and Taxation, appeared on behalf of Defendant.
 I. STATEMENT OF FACTS
Plaintiffs purchased the subject property, identified as Account 05002052, paying $530,000 to American Home Mortgage Acceptance, Inc (American Home Mortgage). (Def s Ex A-9.) American Home Mortgage secured ownership of the property from the Clackamas County Sheriff on January 29, 2008, for consideration in the amount of $650,000. (Def s Ex A-8.) For tax year 2007-08, the subject property's tax roll values were:

Real Market Value (RMV) $847,582
Maximum Assessed Value and Assessed Value: $464,844

(Def s Ex A-10.) Taylor concluded that the 2007-08 subject property's real market value was $530,000. (Ptfs' Ex 1-1.) Dodd determined that "the real market value could be reduced to *Page 2 
$710,000, but the plaintiff would not be aggrieved under either Measure 50, or Measure 5." (Def's Ex A-1.) Dodd explained that "[a] reduction in the RMV to $710,000 would not affect the taxes paid under Measure 50. It would require a reduction of the RMV to $676,626 in order for any taxes to be refunded under Measure 5." (Id.)
The subject property is a 3,660 square foot, two-level, four bedroom and three full bathroom house built in 2001 and located in West Linn, Oregon. (Ptfs' Ex 2-1.) Taylor described the lot as a "flag lot" because access is from a long private driveway that also serves as an emergency vehicle access easement. The original property owners paid $489,000 for the property which was listed for sale in June, 2004; they sold the property 10 months later for $589,000 after the listing price was reduced three times. (Ptfs' Ex 4-1.) Taylor testified that, after the owner died, the subject property sat vacant for approximately two years before it was listed for sale in September 2007. The listing price was $719,000 for two month; the listing price was reduced to $609,000 in late November 2007. (Id.)
Plaintiffs purchased the subject property in December 2007, 92 days after it was listed for sale. Taylor testified that the subject property was purchased from American Home Mortgage which acquired it "at a judicial sale" as "part of a foreclosure" when the heirs of the property owner had not paid the mortgage payments nor maintained the property for approximately two years. Taylor described his purchase as an arm's length transaction. Dodd testified that Taylor's purchase was not "true arm's length" because the "mortgage company did not want to hold the property; they needed to sell the property to get a return on their investment." Dodd concluded that it was a "duress transaction because American Home Mortgage wanted to sell the property as quickly as possible." He testified that the county would not use the "transaction in its sales *Page 3 
study." Taylor asked Dodd if he had had a "conversation" with American Home Mortgage and Dodd answered that he had not.
At the time Plaintiffs purchased the property, an appraisal report was issued. The appraiser concluded that the real market value of the subject property as of December 19, 2007, was $660,000. (Ptfs' Ex 4-3.) The report stated the "appraisal is made "as is'. * * * This report is made as-is with no repairs necessary." (Id.) Plaintiffs' appraiser stated that "[a] complete visual inspection of the interior and exterior of the subject property was performed." (Ptfs' Ex 4-4.) Three days later, Accu-Rite Building Inspections submitted a 12 page report to Plaintiffs, listing suggested repairs and attaching photographs. (Ptfs' Ex 2-1 through 2-32.)
Plaintiffs' appraiser's report listed three comparable properties to the subject property with adjusted sale prices ranging from $639,060 to $699,280. (Ptfs' Ex 4-3.) Dodd commented that none of the comparable sales prices in the appraisal report were adjusted for "time." Dodd quickly computed time adjusted sale prices which ranged from approximately $671,000 to $741,000. Dodd concluded that Plaintiffs' own appraisal report does not support a real market value of $530,000.
Taylor provided "rmls" (realtor multiple listing service) pictures and information for seven properties he concluded were comparable to the subject property. (Ptfs' Ex 3-1 through 3-7.) He testified that, for each property, the listing price was significantly more than the selling price. Taylor testified that, within the neighborhood, homes sell for prices that can be "as much as $100,000 different." For example, he stated that one home sold for $600,000 and a month later another sold for $695,000. (Ptfs' Exs 3-2; 3-6.) Using Plaintiffs' comparable sales, Dodd testified that the county's real market value on the tax roll for each property was approximately 13 percent to 29 percent more than the reported selling prices. He testified that the subject *Page 4 
property's real market value on the tax roll was approximately $847,000, which is about 16 percent more than Defendant's estimated real market of $710,000 as of the assessment date.
Dodd reviewed his appraisal report. (Def's Ex A.) He testified that residential purchase prices in the county continued to increase until March or April 2007, when they began to "slide." Dodd presented four comparable sales and concluded that comparable sale #2 was "the closest to the subject property" because it had "the least amount of overall net adjustment" to the sale price. The adjusted sale price of comparable sale #2 was $710,830, which is close to Defendant's estimated real market value. (Def's Ex A-2.) The adjusted sale prices of the four comparable properties ranged from $684,150 to $740,860. (Id.) Comparable sale #3 was sold in October 2006, a date closest to the assessment date. (Id.) Dodd incorrectly stated that the subject property had 2.5 bathrooms whereas it had 3.5 bathrooms. (Id.; Ptfs' Exs 2-1; 4-3; 4-9.) All of Dodd's comparable sales, except comparable sale #3, had 2.5 bathrooms and were "5+ quality." (Def's Ex A-2.) Dodd concluded all properties were in average condition which Taylor disputed, given his inspection report and over $20,000 he had spent to date to paint, repair the roof, replace carpeting, and maintain the subject property.
 II. ANALYSIS
Plaintiffs appeal the 2007-08 real market value of their property. Real market value is the standard used throughout the ad valorem statutes except for special assessments. Richardson v. Clackamas CountyAssessor, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) *Page 5 
(citing Gangle v. Dept. of Rev., 13 OTR 343, 353 (1995)). Real market value is defined in ORS 308.205(1)[1], which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property, even if one of the approaches is found to not be applicable.See ORS 308.205(2); OAR 150-308.205-(A)(2).
The income approach is not an applicable method for property like the subject property, which is a non-income producing residential property.
The cost approach is considered useful in estimating the real market value of new construction because cost and market value can be more closely related when properties are new. The subject property was built in 2001. Plaintiffs' appraiser computed a "replacement cost new" of $624,116 using the cost approach. (Ptfs' Ex 4-4.) Plaintiffs' appraiser concluded that "[t]he cost approach and the sales comparison approach support the estimated value of the subject [property]." (Ptfs' Ex 4-3.) Plaintiffs' appraiser computed a full year of depreciation in 2007 based on his appraisal date. If depreciation is adjusted to the tax assessment date, the indicated value using the cost approach would be approximately $653,000. Dodd did not use the cost approach.
In a case such as this one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corp v. LaneCounty Assessor, TC-MD No 060354D (April 3, 2007), citing Appraisal Institute, The Appraisal of Real Estate 335 (12th ed 2001). Plaintiffs' appraiser *Page 6 
concluded that "[t]he sales comparison approach is considered to be the most reliable indicator of value as it most accurately reflects the motivations of the buyers and sellers in the market." (Ptfs' Ex 4-3.) Dodd only used the comparable sales approach. The court agrees with the parties that the comparable sale approach is the most reliable indicator of value.
For the comparable sales approach, Plaintiffs suggest that the court conclude that the real market value was their purchase price of the subject property. Taylor concludes that Plaintiffs' purchase, which took place more than 11 months after the assessment date, January 1, 2007, supports his determination that the subject property's real market value should be $530,000. The Oregon Supreme Court concluded that "[i]f the sale [of the subject property] is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." Kem v. Dept. of Rev., 267 Or 111,114, 514 P2d 1335 (1973). The Court "emphasize[s]" that a recent sale of the subject property is not necessarily determinative of market value and does not foreclose other methods of valuation * * *." Id. at 115.
This court stated that "[i]n determining the probable value at which the property would change hands in the market place, the appraiser must consider the transaction from the seller's viewpoint as well as the buyer's." Lincoln County Assessor v. YCP Salishan LP, 15 OTR 354, 360
(2001). The seller, American Home Mortgage, received the property in satisfaction of a $650,000 judgment against the property owner's heirs. Considering the transaction from the seller's viewpoint, the sale to Plaintiffs resulted in a $120,000 loss for the seller. Because the seller's representative did not testify, the court was not provided with an opportunity to question the seller about the transaction with Plaintiffs and to ask why the seller accepted the property in satisfaction of a $650,000 judgment if it knew the subject property's real *Page 7 
market value was less than the total amount of the judgment. Evidence shows that, for the seller, it was a quick sale-92 days from the date the property was listed. The April 2005 sale of the subject property took over 10 months from the listing date to transfer the property to a new owner. Plaintiffs' purchase price in December 2007 was less than the property's April 2005 sale price ($589,000). (Ptfs' Ex 4-1.) Dodd testified that property values in the county increased until mid-2007. No explanation was provided for why the subject property's real market value would be less than the April 2005 value, given the overall county property value increases up to and including the assessment date. Given the seller's acquisition of the property in satisfaction of a judgment followed by a quick sale to Plaintiffs, the court agrees with Defendant that Plaintiffs' purchase price is not necessarily the best evidence of the subject property's market value.
The comparable sales presented by Plaintiffs' appraiser supports the court's conclusion that Plaintiffs' purchase price is not the real market value as of the assessment date. Plaintiffs' appraiser determined an "as-is" real market value of $660,000 on December 19, 2007. Dodd noted that the appraiser's comparable sales were not time adjusted to the assessment date. The real market value must be determined as of January 1 of each year. ORS 308.210(1). Time is one of the usual adjustments made to a sale price to determine an indicated value of all comparable properties as of the assessment date. After Dodd made a time adjustment to Plaintiffs' appraiser's comparable sale prices, the subject property's real market value 12 months after the assessment date was approximately $690,000. Plaintiffs' appraiser and Dodd both selected a property located at 3948 S. Roxbury — the subject property's address is 3997 S. Roxbury — as comparable to the subject property. (Ptfs' Ex 4-3; Def s Ex A-2.) After adjusting Plaintiffs' appraiser's indicated value for time, the parties' adjusted sale prices for that *Page 8 
comparable property are almost the same or approximately $734,000. That adjusted sale price was at the high end of the indicated value range. (Id.) Based on the evidence, the subject property's real market value was close to $700,000 on the assessment date.
A taxpayer must have standing to bring a property tax appeal to the court. ORS 305.275. To have standing, a taxpayer must be "aggrieved." ORS 305.275(1)(a). "In requiring that taxpayers be "aggrieved' under ORS305.275, the legislature intended that the taxpayer have an immediate claim of wrong. It did not intend that taxpayers could require the expenditure of public resources to litigate issues that might never arise." Kaady v. Dept. of Rev., 15 OTR 124, 125 (2000).
For the court to order a change in the subject property's real market value, Plaintiffs must show that they are aggrieved. Plaintiffs would be aggrieved if the value change ordered by the court resulted in Plaintiffs paying less real property taxes. Dodd stated that "a reduction of the RMV to $676,626 [is necessary] in order for any taxes to be refunded under Measure 5." (Def's Ex A-1.) Even if the court were to accept Plaintiffs' appraiser's "as-is" real market value adjusted for time ($690,000), there would be no change in the amount of property taxes Plaintiffs paid for the tax year. If the court concluded that the real market value should be adjusted for costs other than general ongoing maintenance costs like painting and roof repair, the court lacks the evidence to support such an adjustment. In sum, the evidence does not support a real market value equal to or less than $676,626. Plaintiffs are not aggrieved.
 III. CONCLUSION
After careful review of the evidence, the court concludes that Plaintiffs' purchase price paid in late December 2007 was not the subject property's real market value as of January 1, 2007. Plaintiffs' appraiser and Defendant's appraiser both concluded that the real market value *Page 9 
was substantially in excess of Plaintiffs' purchase price. In order for Plaintiffs to be aggrieved, the subject property's real market value must be equal to or less than $676,626 to result in a reduction in Plaintiffs' property tax liability. The evidence does not support a real market value equal to or less than $676,626 as of January 1, 2007. Plaintiffs are not aggrieved "under ORS 305.275 and consequently do not have standing to appeal to the Oregon Tax Court." Paris v. Dept. ofRev., ___ OTR ___, TC No 4831 (Nov 5, 2008.) Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.
Dated _____ this day of February 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onFebruary 10, 2009. The Court filed and entered this document on February10, 2009.
[1] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to year 2005.