DECISION
Plaintiff appeals the real market value of property, identified as Account M361418 (subject property), for the 2009-10 tax year. A trial was held by telephone on April 7, 2011. Charlie Swan (Swan), president of Plaintiff, appeared and testified on behalf of Plaintiff. Scott Carver (Carver) appeared on behalf of Defendant. Kurt Hamm (Hamm), real property appraiser, Multnomah County Department of Assessment and Taxation, testified on behalf of Defendant.
 I. STATEMENT OF FACTS
The subject property is "a 1995 Nashua, double wide 26' x 52', which was built in Idaho and shipped to Portland." (Def's Ex A at 2.) It "is located in Southeast Portland in the unincorporated area of East Multnomah County" near the manufactured park, Aspen Meadows, which was "built in 1994." (Id.) Hamm testified that he inspected the subject property on September 2, 2010, and found it to be "in average condition at the time of the inspection." (Id.) Because Plaintiff "replaced some windows, carpets, and painted[,]" Hamm determined that "the overall condition was * * * average minus as of 1-1-2009." (Id.) The subject property "has a two car attached garage." (Id.) *Page 2 
Swan testified that Plaintiff purchased the property from Raymond Poujade (Poujade) for $25,000. Swan did not recall the purchase date at trial, but testified that the date reflected in his exhibits was the accurate date. Plaintiff's exhibits indicate that Plaintiff purchased the subject property from Poujade on November 15, 2009. (Ptf's Ex 1 at 4-6.) Swan testified that he was approached by Poujade's son to purchase the subject property and, at that time, Swan stated that he "[did not] really want it" but "would take it [for] $25,000." (Ptf's Ex 4 at 2.) Swan reported that "[s]everal weeks or even months went by" before Poujade's son called Swan back and agreed to sell the subject property to Swan for $25,000. (Id.) Swan testified that the sale was arm's-length, identifying the following facts as supporting that contention: Swan was not in business with Poujade; Swan was only loosely acquainted with Poujade ("[o]n several occasions [Swan] spoke to the seller when [they] were both retrieving [their] mail"); and neither Swan nor Poujade was under "financial pressure" to make the deal. (See id. at 2-3.)
Swan testified that the subject property was in average condition when he purchased it. He testified that, after he purchased the subject property, he spent about $10,000 making basic repairs and improvements. Swan testified at trial that he did not recall when he made those repairs and improvements to the subject property.
Swan testified that he has no knowledge of whether the subject property had been listed for sale between the time of his initial offer and the purchase date, but he assumes that Poujade's son listed the property. Hamm testified that the subject property "has no history of being listed on the open market" and that "[t]he last sale on record for the subject property prior to the plaintiff's purchase was 3/31/2000 for $76,000." (Def's Ex A at 1, 2.)
Hamm considered the market approach to be the best indicator of value in this case and identified nine comparable sales of manufactured homes built in 1994 or 1995. (Def's Ex A at 3, 5-7.) *Page 3 
Hamm testified that comparable sales 1 and 2 are located in the same manufactured home park as the subject property and comparable sales 3, 4, and 7 are located in the Aspen Meadows park, one "mile east of the subject property." (Id. at 3.) Hamm testified that he "threw out" comparable sale 2 because it required too many adjustments. He gave "equal weight" to comparable sales 1, 3, 4, and 7 and concluded a value of $40,000 for the subject property as of January 1, 2009. (See also id. at 3-4.) Hamm testified that all of the comparable sales that he identified were "exposed to the market," either through "sale by owner" or the multiple listing service. Swan testified that he considered Hamm's comparable sales to be fair.
Swan maintains that the best evidence of the real market value in this case is Plaintiff's purchase price of $25,000, which is Plaintiff's requested real market value. Defendant requests a real market value of $40,000, which is the real market value concluded under Hamm's appraisal. The current roll real market value, sustained by the board of property tax appeals, is $45,280. (Ptf's Compl at 3.) The maximum assessed value is set at $48,860. (Id.)
 II. ANALYSIS
The issue in this case is the real market value of the subject property for the 2009-10 tax year. Real market value is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205.[1] The assessment date for the 2009-10 tax year was January 1, 2009. ORS 308.007; ORS 308.210. Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. ofRevenue, 4 OTR 302, 312 (1971). Plaintiff "must *Page 4 
establish by competent evidence what the appropriate value of the property was as of the assessment date in question."Woods v. Dept. of Rev., 16 OTR 56, 59 (2002). "When the determination of real market value * * * is an issue before the tax court, the court has jurisdiction to determine the real market value * * * on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.
A. Purchase Price
"A recent sale of the [subject] property * * * is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value."Kem v. Dept. of Rev. (Kem),267 Or 111, 114, 514, P2d 1335 (1973) (citations omitted). The Court in Kem "emphasize[d] that a recent sale of the subject property is not necessarily determinative of market value and does not foreclose other methods of valuation[.]" Id. at 115. Plaintiff's purchase of the subject property closed more than eleven months after the assessment date and was not, therefore, "recent" with respect to the January 1, 2009, assessment date. Plaintiff did not make any time adjustments to the purchase price.
B. Approaches of Valuation — Real Market Value
There are three methods used to determine real market value: the cost approach, the income approach, and the sales comparison or market approach. Allen v. Dept. of Rev.,17 OTR 248, 252 (2003). All three approaches must be considered, although "it may be that all three approaches cannot be applied" for a particular property. OAR 150-308.205-(A)(2)(a). Defendant relied on the market approach. *Page 5 
"Under the [market] approach, the value of a property is derived by `comparing the subject property with similar properties, called comparable sales.' That comparison is based on many factors, and adjustments are made for any differences between the comparable sales and the subject property so that the appraiser can derive a value for the subject property." Magno v. Dept. of Rev.,19 OTR 51, 58 (2006) (citations omitted). Thus, "[t]he court looks for arm's length sale transactions of property similar in size, quality, age and location" in order to determine the [real market value] of the subject property. Richardson v. Clackamas CountyAssessor, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003).
Plaintiff offered no competent evidence other than the purchase price of the subject property on November 15, 2009, to support its claim that the real market value of the subject property was $25,000 as of January 1, 2009. Plaintiff did not make any time adjustments to the $25,000 purchase price. Plaintiff has failed to establish by a preponderance of the evidence that the real market value of the subject property was $25,000 as of January 1, 2009. Defendant presented evidence of a comparable sale in the same manufactured home park as the subject property as well as comparable sales in a nearby park, supporting a real market value of $40,000 for the subject property as of January 1, 2009. Swan testified that he considered Defendant's comparable sales to be fair. The court also found Defendant's comparable sales to be persuasive and concludes that the 2009-10 real market value of the subject property was $40,000.
 III. CONCLUSION
Based on the comparable sales presented by Defendant, the court concludes that the 2009-10 real market value of the subject property was $40,000. Now, therefore, *Page 6 
IT IS THE DECISION OF THIS COURT that the 2009-10 real market value of property identified as Account M361418 was $40,000.
Dated this ___ day of June 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on June 10, 2011. The Court filed and entered this documenton June 10, 2011.
[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2007. *Page 1