IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

PROVIDENCE JUNCTION LIMITED   )
PARTNERSHIP,        )
             )
    Plaintiff,     )  TC-MD 200058N
             )
   v.        )
             )
WALLOWA COUNTY ASSESSOR,   )
             )
    Defendant.    )  **DECISION**

Plaintiff appealed the real market value of personal property, identified as Account 768348 (subject property), for the 2019-20 tax year. A trial was held on July 22, 2020, in the courtroom of the Oregon Tax Court. D. Rahn Hostetter (Hostetter), an Oregon attorney, appeared by telephone on behalf of Plaintiff and testified on behalf of Plaintiff. Alfred Adelsberger (Adelsberger), Plaintiff's principal, testified by telephone on behalf of Plaintiff. Paige Sully, county counsel, appeared by video on behalf of Defendant. Ashley Christman (Christman), an appraiser in Defendant's office, testified by video on behalf of Defendant. Plaintiff offered no exhibits, instead relying on Defendant's exhibits. Defendant's Exhibits A, B, and D through G were received without objection. Exhibit C, a 2017-18 property tax warrant on the subject property, was admitted over Plaintiff's objection to its relevance.

## I. STATEMENT OF FACTS

The subject property is equipment and other tangible assets located in a grocery store in Joseph, Oregon. Adelsberger testified that Plaintiff purchased the grocery store in 2005. It leased the store to Mt. Joseph Family Foods LLC and its principal Troy Berglund (Berglund), who started operating in 2005 or 2006. Berglund owned the subject property and filed annual returns with Defendant. (*See* Ex A.) The last personal property return filed with Defendant lists

112 assets[1] purchased in the years spanning 2005 through 2016. (*Id.* at 3-6.) The most expensive assets by purchase cost were a mini vacuum packer for $6,380 in 2006; check stands and scan systems for $44,110 in 2009; a produce case for $13,309 in 2013; a vertical produce rack misting system for $8,450 in 2013; and a walk-in freezer for $10,654 in 2016. (*Id.*)

Adelsberger[2] owned another grocery store in La Grande, Oregon, which he leased to Berglund through Marketplace Family Foods LLC. That grocery store was constructed in 2015 and opened in 2016. In late 2017 or early 2018, Adelsberger learned that Berglund was ceasing operations of both grocery stores because he was behind on tax obligations and he was planning to file for bankruptcy. Berglund essentially closed the doors and walked away, leaving the inventory (groceries) and the subject property behind. In January 2018, Adelsberger secured the store and winterized it to make sure the pipes did not burst; he removed produce that would rot and left everything else intact. He was concerned about the community's need for the grocery store; it is the only one in town and the next nearest one is six miles away, a problem in the winter. Adelsberger wanted to find another operator as soon as possible.

Plaintiff was a creditor in Berglund's bankruptcy but did not receive anything. U.S. Bank (the bank) held a security interest in the subject property and became its owner following the bankruptcy. Starting at some point prior to March 13, 2018, Hofstetter engaged in negotiations with the bank's attorney, David McCallister (McCallister) to purchase the subject property along

---

[1] Some of the 112 assets were marked off the list, presumably indicating they were retired.

[2] Adelsberger testified that he has been in business for 40 years and has owned hundreds of apartments, including personal property; he owned a large restaurant in California in the 1990s; he built and operated a large indoor property for sporting events; he owned two "elderly care facilities" in the 1980s; he owns an equestrian center; and he is currently developing townhouse properties, among other ventures. Adelsberger also owned the two buildings next door to Mt. Joseph Family Foods.

with the personal property located at the La Grande grocery store. (*See* Ex F at 8.[3])

Following negotiations with the bank, Plaintiff purchased the subject property along with personal property from the La Grande store on April 30, 2018. (*See* Exs B, D.) Plaintiff offered $40,000 for the La Grande property with $0 allocated to the subject property and the bank countered for $55,000. (Ex F at 10-11.) They reached an agreement for $47,500 with $1,000 allocated to the subject property. (*Id.* at 1, 12.) Then, after the bank learned some liens had been terminated on the subject property, it wanted more money allocated to it, so they changed the accounting to allocate $5,000 of the total price to the subject property. (*See id.* at 2, Ex D.) The bill of sale for the subject property listed the price as $5,000. (Ex D.)

Plaintiff characterizes its purchase of the subject property as an arm's-length sale between experienced and knowledgeable parties reflective of real market value. (*See* Ex F at 2 (email from McAllister stating that the bank "is willing to entertain an offer for the sale of [the subject property] to your client based upon the fair market value of these assets").) Adelsberger testified that the bank had an appraiser walk through the Joseph property after which the bank said it was not interested in the subject property. Plaintiff allocated $5,000 of the total purchase price to the subject property due to the bank's accounting concerns. Adelsberger testified that the subject property had no value; much of it existed before Berglund's tenure, so it was 20 to 25 years old. It was functionally and economically obsolete and had reached the end of its useful life. He kept the subject property in the building while marketing it to help the appearance, but 99 percent of the assets were ripped out by the new lessee. A newer produce case purchased by

---

[3] Hofstetter's email sent March 13, 2018, began by "confirm[ing] that US Bank has no interest in pursuing its security interest in what is left of the collateral" at the Joseph store. Hofstetter testified that the negotiations began by phone and then proceeded over email. The bank was going to terminate its UCC filing and then Plaintiff was going to "dispose" of the subject property "in whatever way is prudent." (Ex F at 8.)

Berglund may have remained after the new lease. The store had a soft reopening in the summer 2018 and started remodeling immediately.

Defendant disagreed that Plaintiff's purchase of the subject property represented a bona fide, arm's-length sale free from compulsion. Defendant questioned Hostetter and Adelsberger about numerous aspects of the negotiations with the bank. On March 14, 2018, Hostetter wrote that Plaintiff was "willing to pay $44,000 if we can get it done quickly[,]" noting that Plaintiff "needs to get the premises cleared asap." (Ex F at 7.) Adelsberger testified that every landlord wants cash flow; he was in a rush with the La Grande property but less so with the Joseph property. On April 13, 2018, Hostetter wrote that, in the absence of a deal, he and McCallister would "need to discuss [the bank's] immediate removal of the collateral from the premises, as well as the costs incurred by [Plaintiff] for storage costs and delays." (*Id.* at 13.) Adelsberger testified that that was a negotiating tactic to get the deal moving along after a seven-week negotiation on a simple and worthless asset.

Hostetter testified that he was not initially aware of any property tax issues with the subject property and first learned of the 2017 property tax warrant in fall 2018. (*See* Ex C (personal property tax warrant issued December 26, 2017).) At the time Plaintiff purchased the subject property from the bank, he thought the property was unencumbered. Prior to purchase, Hostetter investigated the subject property; he found and resolved liens for the Secretary of State and IRS. He thought he looked at county tax liens but must have missed the 2017 lien. Hostetter opined that, at the time the bank agreed to sell the subject property for $1,000, it thought the subject property was encumbered; once it discovered the other liens were released, it wanted more money.

Christman testified that she visited the Joseph grocery store in mid-June 2020 with the

intent of inspecting the subject property. At the inspection, Hostetter told her he was not aware of which items were old or new, but he thought all were new. A store employee cast some doubt on that. Plaintiff agreed to send a list of new personal property but never did. The 2019-20 tax roll real market value of $78,350 is based on the last asset list provided by Berglund. Plaintiff requests a 2019-20 real market value of $5,000, based on its purchase price.

## II. ANALYSIS

The issue presented is the subject property's 2019-20 real market value. As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of the evidence. ORS 305.427.[4] "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). To meet its burden, Plaintiff must provide "competent evidence" of real market value. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). Competent evidence "includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD 110300D, WL 879285 at *4 (Or Tax M Div, Mar 13, 2012).

Before considering real market value the court must determine the property's highest and best use. *Freedom Fed. Savings and Loan v. Dept. of Rev.* 310 Or 723, 727, 801 P2d 809 (1990). Particularly relevant in the personal property context is whether the property is worth more if valued separately or together. *Serendipity Associates LLC v. Crook County Assessor*, TC-MD 170318R, WL 2215452 at *4 (Or Tax M Div, May 15, 2018) (discussing "assemblage value" as compared with component value). Here, neither party gave any evidence to support a highest and best use finding.

Business personal property is valued at its "real market value" as of January 1 of the

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

assessment year, corresponding to the tax year beginning July 1 of the same calendar year. ORS 308.007, 308.232, 308.250.[5] Real market value is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). There are three approaches to value that must be considered, although each approach may not be applicable: the "sales comparison approach, cost approach, and income approach." OAR 150-308-0240(2)(a). Neither party presented an appraisal report or valuation in accordance with one of the three approaches to value. Plaintiff's value conclusion is based on its purchase price for the subject property. Defendant's value conclusion is based on prior property tax returns and, presumably, depreciated cost.

A.      *Sale of Subject Property*

"A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). Whether a sale is "recent" depends on the similarity of the market conditions on the sale and assessment dates, as well the length of time between them. *Sabin v. Dept. of Rev.*, 270 Or 422, 426–27, 528 P2d 69 (1974). If the interval between the dates is too great, the sale is not recent because "it can be said as a matter of law that there was a change in conditions." *Id*. at 427. But if the interval is not so great, "reference must be made to the underlying conditions affecting

---

[5] Each year, the Department of Revenue determines a threshold value, below which the assessment of a personal property account is canceled. ORS 308.250(2),(4). That threshold value was $17,000 for the 2019-20 tax year. *See* the Oregon Department of Revenue's 2019 confidential personal property return, *available at*: https://www.oregon.gov/dor/forms/FormsPubs/form-or-cppr_553-004_2019.pdf.

value before such evidence can be rejected." *Id*.

Plaintiff purchased the subject property in April 2018, approximately eight months before the January 1, 2019, assessment date. Defendant presented no evidence to demonstrate a significant change in market conditions over that time period, so the court accepts the sale as "recent." The more significant concern here is whether the sale was "voluntary" because the seller – the bank – acquired the subject property following the bankruptcy of the prior owner.

> "There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value. For example, the lender may have a policy of selling such property only for the amount of the underlying debt, regardless of what the property may actually be worth, particularly if it would take a few months more to find a buyer willing to pay a higher price. If so, the sale, at best, likely represents the low end of the real market value range, and may have been well below the actual market value of the property."

*Kryl v. Lane County Assessor*, TC-MD 100192B, WL 1197444 (Or Tax M Div, Mar 30, 2011); *see also* OAR 150-308-0240(2)(c) (excluding foreclosure sales from the sales comparison approach unless adjustments can be made for the nontypical market condition). In *Kryl*, the court declined to rely on a bank sale 61 days after acquisition and at a substantial discount from the listing price. *Id.* By contrast, where a property is listed for an extended period, its listing price may be good evidence of its real market value even if the seller is a bank. *Brashnyk v. Lane County Assessor*, TC-MD 110308, WL 6182028 (Or Tax M Div, Dec 12, 2011) (finding real market value was final listing price where bank sale occurred after five-year listing period).

Plaintiff purchased the subject property from the bank following Berglund's bankruptcy. There is no evidence that the bank listed or otherwise marketed the subject property to obtain the highest price. It is unclear on what date the bank acquired the subject property, but it was likely no earlier than January 2018 based on Adelsberger's testimony. Thus, the bank sold the subject

property within four months of acquiring it. Plaintiff placed pressure on the bank to sell quickly, warning that it may charge storage costs to the bank for further delay. Although Plaintiff and the bank were experienced and knowledgeable, neither possessed typical motivations with respect to the subject property because neither intended to operate a grocery store. Plaintiff's primary motivation was to lease the real property as soon as possible. The bank's primary motivation was, presumably, to recoup the debt associated with the subject property.

Notwithstanding the atypical circumstances surrounding the sale of the subject property, Plaintiff urges the court to find that the subject property was essentially worthless based on its age and other forms of obsolescence. Plaintiff maintains that most of the subject property equipment was, indeed, disposed of by the new grocery store lessee.

"Sales on the basis of disposal at salvage or scrap levels are indicators of market value only when on the assessment date such disposal of the subject property is imminent or has actually taken place." OAR 150-308-0240(2)(e); *see also Durkee v. Lincoln County Assessor*, TC-MD 010491F, WL 36202332 (Or Tax M Div, Dec 27, 2001) (rejecting taxpayer's "item-by-item" methodology for valuing motel furnishings and equipment because that approach represented a "salvage or scrap" value; the property was in use by the motel). Similarly, this court has generally declined to place weight on liquidation or auction sales because those sales do not represent real market value. *See, e.g., Serendipity Associates LLC v. Crook County Assessor*, TC-MD 170318R, WL 2215452 at *4-5 (Or Tax M Div, May 15, 2018) (finding the individual auction prices for rental cabin furnishings understated their value as an assembled set); *Precision Powder Coating Inc. v. Clackamas County Assessor*, TC-MD 070690D, WL 1159327 at *4 (Or Tax M Div, Apr 4, 2008) (finding value based on "attendance at auctions and internet research" insufficient to sustain the burden of proof).

If the subject property assets were entirely disposed of shortly after Plaintiff's purchase in 2018, then the assessment for the 2019-20 tax year should be canceled. Unfortunately, the evidence presented on this point is inconclusive. Plaintiff kept the subject property while securing a new tenant for the grocery store; it helped with the appearance. Plaintiff maintains that the new tenant ripped out most of the subject property equipment in the course of remodeling – however, the new tenant did not testify to that fact, nor did Plaintiff present any documentary evidence to indicate what equipment was removed and what was retained. Christman testified that she visited the subject property in 2020 and was unable to determine which of the subject property assets remained. Adelsberger's testimony that all the subject property assets were 20 to 25 years old is contradicted by the last property tax return filed by Berglund, listing assets purchased between 2005 and 2016. In the absence of clear evidence that the subject property was worthless or disposed of shortly after purchase, the court finds no basis to reduce the 2019-20 real market value or cancel the assessment.[6]

B.      *Depreciated Cost of Subject Property*

Defendant asks the court to sustain the 2019-20 tax roll real market value, which is presumably based on the depreciated cost of the assets listed in the last personal property tax return.[7] The court did not receive a copy of the depreciation schedule used. Additionally,

---

[6] This case bears some similarity to *Depot Investors, Ltd. v. Benton County Assessor*, TC-MD 150309D, WL 947133 (Or Tax M Div, Mar 14, 2016), concerning the value of restaurant equipment and fixtures. The restaurant tenant defaulted on its lease in 2009 and taxpayer retained the personal property. A new tenant occupied the property in 2011, followed by another tenant from 2011 through 2013. Although taxpayer reported all the equipment was removed in 2010, much of it appeared on personal property tax returns filed by the tenant occupying the property from 2011 through 2013. The restaurant was vacant as of the January 1, 2014, assessment date. The taxpayer negotiated a new lease starting March 2015 and was advised by the tenant that the personal property was worthless and had a cost associated with removal. Taxpayer gave a rent concession for removal. Notwithstanding the opinion of the taxpayer and the new restaurant tenant, the court found that the property "was used as late as 2013" and, therefore, had some value as of the January 1, 2014, assessment date. *Id.* at *3. Similarly, here, the subject property was used in a grocery store operation at least as of late 2017.

[7] Acquisitions and dispositions of personal property must be reported on annual returns. *See* ORS 308.290. The returns must include property descriptions, including the year acquired and the cost. ORS 308.290(3)(b). Filing

Adelsberger testified that many of the assets were disposed of following Plaintiff's purchase of the subject property. Unfortunately, it is unclear which assets were retired since 2017 and the court is unable to determine the correct real market value based on the evidence presented. *See* ORS 305.412 (authorizing the court to determine the correct real market value based on the evidence, notwithstanding the values pleaded by the parties).

### III.  CONCLUSION

Upon careful consideration, the court concludes Plaintiff has failed to meet its burden of proof that the subject property's 2019-20 real market value was $5,000.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____day December 2020.


ALLISON R. BOOMER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on December 24, 2020.*

---

a return does not bar a taxpayer, on subsequent appeal, from correcting inaccurate or incomplete information as to the listed items. *See Benj. Franklin Savings and Loan v. Dept. of Rev.*, 310 Or 651, 801 P2d 771 (1990).