DECISION
Plaintiff appealed the value of certain residential property identified as Account 1758174 (subject property) for the 2010-11 tax year. A telephone trial was held on August 15, 2011. David E. Carmichael, Attorney at Law, appeared on behalf of Plaintiff. Sid Voorhees (Voorhees), auctioneer and real estate broker, testified on behalf of Plaintiff. Bryce Krehbiel (Krehbiel), Residential Appraiser, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 and Rebuttal Exhibit 1 were offered and received without objection. Defendant's Exhibits A through N were offered and received without objection.
 I. STATEMENT OF FACTS
Voorhees testified that he is a consulting contractor with Plaintiff for the Oregon, Washington, and Idaho regions. He testified that he visits sites, determines what it will take to make each site "market ready," and coordinates with local real estate agents. Voorhees testified that he also works as a personal property appraiser for Plaintiff. Voorhees testified that the subject property is located in the Lord Byron neighborhood (Lord Byron) in Eugene, Oregon. He testified that he has been involved with all four of the Lord Bryon properties owned by Plaintiff. Voorhees testified that he inspected each of those properties and put together "punch lists" to make the properties "market ready." *Page 2 
A. Plaintiff's value evidence
Voorhees testified that, as of January 1, 2007, the subject property was 100 percent complete. He testified that he knows the builder of subject property and he is a good builder; however, when money gets tight, corners are cut. Voorhees testified that the subject property has a tile deck with a leak that resulted in mold in the garage. He testified that, with respect to the subject property, drainage was overlooked, resulting in the leak. Voorhees testified that there have not been any attempts to repair the tile roof above the garage of the subject property.
Voorhees testified that he called a mold expert concerning the subject property and was told to wash down the walls and see if the problem was resolved. He testified that he attempted to clean up the mold in March or April of 2010, by washing down one wall of the subject property; however, the mold returned when it began to rain, about mid-October or early November 2010. Voorhees testified that there is no report on the mold; his testimony is based on his observations. He testified that the mold would be easily observed upon inspection of the subject property. Voorhees testified that the subject property buyer had several inspections completed, but he does not have any of those inspections. (Ptf's Ex 1 at 14.) Voorhees testified concerning his experience with a mold problem affecting a property that sold recently in La Pine, Oregon, also owned by Plaintiff. He testified that the cost to fix the mold problem was approximately $60,000 to $70,000, and required that the sheet rock be removed from the walls.
Voorhees testified that the subject property is one of the earlier built homes in the Lord Byron neighborhood. He testified that subsequently built Lord Bryon properties are of a better condition than the subject property. Voorhees testified that the mold problem influenced the decision to sell the property "as is." (Ptf's Ex 1 at 7.) He testified that the subject property had a few other issues that could be fixed, but the drainage and mold problems were "not good." *Page 3 
Voorhees testified that, unlike the subject property, the other Lord Byron properties were not sold "as is." He testified that it is very strange to sell a two or three year old property "as is." Voorhees testified that the subject property sale closed in December 2010, for $275,000. (Ptf's Ex 1 at 1.) He testified that the buyer inspected the subject property and made a counteroffer following the inspection.
B. Prior offers to purchase subject property
Voorhees testified that, between December 2009 and March 2010, Plaintiff received four offers to purchase the subject property. (Ptf's Ex 1 at 15 — 62.) Voorhees testified that, in December 2009, Plaintiff received an offer of $340,000 for the subject property. (Id. at 50.) He testified that, in March 2010, Plaintiff received offers of $335,000, $325,000, and $320,000 for the subject property. (See Ptf's Ex 1 at 15-46.) Voorhees testified that, for each offer received in March 2010, Plaintiff counter-offered $340,000 or $345,000. (See Id.) Voorhees testified that two of the March 2010 offerors subsequently purchased different Lord Bryon properties in April and May 2010. (See Def's Ex H and I.) He testified that Plaintiff received no offers for the subject property between March and November 2010.
Voorhees testified that, at the time of the $325,000 offer in March 2010, the market was stronger, so he advised Plaintiff to counteroffer $340,000. He testified that he was not involved with the subsequent offers and counteroffers. Voorhees testified that his opinion of the subject property's value as of March 2010 was $340,000; that was based in part on his hope that the mold issue was not a serious problem that would return. He testified that $340,000 would be a good price for the subject property if it did not suffer from mold problems. Voorhees testified that the subject property's real estate agent, Skillern, is of the opinion that the leak, mold, and mildew problems killed each of the four potential deals; he agrees with Skillern's opinion. *Page 4 
C. Defendant's value evidence
Krehbiel testified that he considers Lord Byron to be a unique neighborhood; he has visited numerous times. He testified that, given the real estate market, nearly all of the Lord Byron sales have been foreclosures. Krehbiel testified that the subject property is very similar to other Lord Byron properties; all are three stories and of a very similar age and size. He testified concerning the sales dates, prices, and time trended prices of nine Lord Byron properties that sold in 2010, including the subject property, as follows:
 Sale date Sale price
 Time trended Time trended Exhibit
 sale price sale price ($/SF)
3/3/10 $360,000 $363,312 $157 Def's Ex E
3/19/10 $350,000 $354,830 $152 Def's Ex G[1]
4/16/10 $329,000 $335,054 $132 Def's Ex H
5/5/10 $318,000 $325,314 $141 Def's Ex I
5/14/10 $360,000 $368,280 $145 Def's Ex F
7/6/10 $300,000 $309,660 $120 Def's Ex K
7/27/10 $290,000 $299,338 $120 Def's Ex L
11/1/10 $300,000 $315,180 $146 Def's Ex J
12/17/10 $275,000 $290,125 $119 Def's Ex D
subject property

Although Krehbiel calculated a time-trended value of $290,125 for the subject property, he testified that he disagreed that the 2010-11 roll value should be reduced to $290,125. Krehbiel testified that the four sales that occurred closest to the January 1, 2010, assessment date have a median time-trended sale price of approximately $350,000 and are close to the subject property listing price of $359,900. (See Def's Ex D.) Krehbiel testified that he has never seen any mold reports for the subject property, nor has he seen any of the numerous home inspections that have been completed. He testified that there is no "cost to cure" evidence for the subject *Page 5 
property. Krehbiel testified that he places weight on Plaintiff's opinion of value as evidenced by its counteroffers. He testified that Plaintiff's opinion of the value of the subject property appears to have been $380,000 as of December 2009, and $340,000 as of March 2010. Krehbiel testified that the subject property was sold "as is" whereas the other sales are not stated to have been "as is" by the Regional Multiple Listing Service. He testified that he is not aware if any of the comparable sales that he presented suffer from mold or leakage problems.
The 2010-11 roll real market value of the subject property is $370,500; that value was sustained by the board of property tax appeals. (Ptf's Compl at 2.) The 2010-11 maximum assessed value of the subject property is $289,903. (Id.) Plaintiff requests a 2010-11 real market value of $275,000 based on the sale of the subject property in December 2010, but would also be willing to accept a 2010-11 real market value of $290,125, which is the sale price time-trended to January 1, 2010. Defendant requests that the roll value be sustained.
 II. ANALYSIS
The issue before the court is the real market value of the subject property for the 2010-11 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing Gangle v. Dept. of Rev.,13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[2]
The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210. *Page 6 
The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches of value that must be considered are: (1) the sales comparison approach; (2) the cost approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. Id. The approach of valuation to be used is a question of fact to be determined on the record. Pacific Power and Light Co. v. Dept. of Rev.,286 Or 529, 533, 596 P2d 912 (1979).
The lack of an appraisal is not fatal because "[t]he various approaches to valuation * * * are only vehicles used to determine the ultimate fact — market value." Kem v. Dept. of Rev. (Kem),267 Or 111, 114, 514 P2d 1335 (1973). "A recent sale of the property in question is important in determining its market value." Id. "If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value." Id.
Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Rev., 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof[.]" Reed v. Dept. of Rev.,310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.
As stated in Kem, the "recent, voluntary, arm's length" sale of the subject property is important to determining its real market value.Kem, 267 Or at 114. The December 2010, sale of the subject property for $275,000 was not recent with respect to the January 1, 2010, assessment date. Based on Defendant's evidence, the sale price of the subject property adjusted *Page 7 
for time indicates a value of $290,125, or $119 per square foot, as of the January 1, 2010, assessment date. Defendant provided additional evidence of value based on the sale of eight other Lord Bryon properties during 2010. After adjusting for time, the sales prices of those properties ranged from $120 to $157 per square foot. The time adjusted sale price of the subject property is $1 per square foot less than the bottom of the range of comparable property sales prices. Defendant disagrees that the value of the subject property as of January 1, 2010, was $290,125.
Voorhees testified that the subject property suffers from a leak in the garage and a related mold problem. He testified that, in part because of those problems, the subject property was sold "as is." Voorhees testified that the leak and mold problem was apparent to potential buyers and home inspectors. Plaintiff's evidence concerning the leak and mold problems affecting the subject property in conjunction with the fact that the subject property was sold "as is," unlike the other Lord Byron properties, supports a value at the low end of the indicated range of values. As noted by Defendant, Plaintiff did not present evidence concerning the cost associated with the mold problem; consequently, the court cannot determine the cost to cure the mold problem. Although the court did not receive cost to cure evidence, the existence of the mold problem is supportive of a value at the low end of the range of values indicated by Defendant's comparable sales. The court finds that the value of the subject property as of January 1, 2010, was $290,125.
For the court to order a change in real market value to the tax roll, Plaintiff must be aggrieved. ORS 305.275(1)(a). To be aggrieved, the ordered change to the tax roll must result in a property tax reduction. The 2010-11 maximum assessed value of the subject property is $289,903, and the court did not receive evidence as to whether a reduction in the real market value to $290,125 would result in tax savings to Plaintiff. / / / *Page 8 
 III. CONCLUSION
After carefully considering the testimony and evidence presented, the court finds that the 2010-11 real market value of the subject property was $290,125. The tax roll will not be adjusted to reflect a real market value of $290,125 unless Plaintiff is aggrieved. Now, therefore,
IT IS THE DECISION OF THIS COURT that the 2010-11 real market value of property identified as Account 1758174 was $290,125 and the tax roll will be adjusted only if Plaintiff is aggrieved.
Dated this ____ day of December 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on December 13, 2011. The Court filed and entered this documenton December 13, 2011.
[1] Krehbiel testified that this property was sold by the same realtor who sold the subject property, Skilton.
[2] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009. *Page 1