IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JAIME O. LOPEZ,                              )
                                             )
            Plaintiff,                       )    TC-MD 150315N
                                             )
      v.                                     )
                                             )
CURRY COUNTY ASSESSOR,                       )
                                             )
            Defendant.                       )    **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered

October 20, 2015. The court did not receive a statement of costs and disbursements within 14

days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals the real market value and exception value of property identified as

Account R11997 (subject property) for the 2014-15 tax year. A telephone trial was held on

September 1, 2015. Plaintiff appeared and testified on his own behalf. Lacey Young (Young),

Cartographic Technician/Appraiser III, appeared and testified on behalf of Defendant. Plaintiff's

Exhibits A through D and Defendant's Exhibits A through E were received without objection.

I. STATEMENT OF FACTS

Young wrote in her report that the subject property is a 530-square foot manufactured

structure situated on a 2.87-acre lot in Brookings, Oregon. (*See* Def's Ex B at 2.) She reported

the subject property's actual age to be 1962 and its effective age to be 1970. (*See id.*) Young

testified that she and other appraisers from Defendant's office inspected the subject property on

October 14, 2013. (*See* Def's Ex A at 2.) Young testified that, during the site inspection, she

observed that Plaintiff had made several improvements to the subject property that were not

reflected on the tax roll. (*See id.*) She testified that Plaintiff had

"added a 1,590 square foot low cost finished enclosed porch, made changes to the existing enclosed porch so it is part of the living area, [added] a 1,276 square foot detached garage, [added] 2,000 square feet of concrete[,] and upgraded the material for the decking and roof cover."

(*Id.*) Young testified that she observed that Plaintiff had filled in a former swimming pool on the subject property and that area had become the new enclosed porch. Young testified that Defendant was unaware of Plaintiff's changes to the subject property prior to the site inspection because Plaintiff did not obtain any permits for the new construction. (*See also id.*)

A.    *Plaintiff's Exception Value and Real Market Value Evidence*

Plaintiff testified that he purchased the subject property in 2001 for $50,000. He testified that he spent no more than $20,000 on improvements to the subject property. Plaintiff provided detailed packets of receipts and invoices dated from 2004 through 2011 for four "projects" that he completed on the subject property: Concrete (Project A), Garage (Project B), Pool Room (Project C), and Porch or Deck (Project D). (*See* Ptf's Exs A-D.) He testified that he spent $5,798.03 on Project A, $4,623.14 on Project B,[1] $4,209.22 on Project C, and $2,447.27 on Project D. (*See id.*) Plaintiff's reported total cost for the four projects was $17,077.66. (*See id.*) He testified that each of the four projects cost less than $10,000 and should not, therefore, be added as exception value. On cross examination, Plaintiff testified that he was able to obtain some materials at a discount or for free. He testified the he did not have any labor costs because he performed the labor himself.

B.    *Defendant's Exception Value and Real Market Value Evidence*

Young testified that Defendant calculated exception value of $34,120 for the subject property for the 2014-15 tax year. (*See* Def's Ex A at 1.) She testified that total value is

---

[1] Plaintiff noted at that the beginning of trial that his Exhibits B-27 and B-40 were duplicate documents. He further noted that he failed to include Exhibit B-25 in his packet for Project B.

comprised of $730 added for the improvement to the roof; $650 added for the improvement to the deck; $12,250 added for the conversion of the swimming pool to new enclosed porch; $1,370 added for the improvement of the existing enclosed porch; $10,380 added for the construction of the unfinished detached garage; and $8,740 added for the new concrete. (*See id.*)

Young testified that she prepared a comparable sales analysis for the board of property tax appeals (BOPTA) hearing and she provided a copy of that analysis with her trial exhibits. (*See* Def's Ex B at 3-6.) In her comparable sales analysis, she identified three comparable sales that occurred between May and December 2013. (*See id.* at 6.) Young made adjustments for differences in location, view, land size, improvement size, and additional improvements. (*See id*.) She adjusted each of her comparable sales downward by $55,600 to $65,500 for location, and her net adjustment to each sale was downward. (*See id.*) Young determined an adjusted sale price range of $126,000 to $160,000 and concluded the subject property's 2014-15 real market value was $126,000. (*See id*.)

C.      *Tax Roll Values and Parties' Requests*

The subject property's 2014-15 tax roll real market value was $141,090 and its exception value was $51,970. (*See* Ptf's Compl at 2.) BOPTA reduced the subject property's 2014-15 real market value to $123,230 and its exception value to $34,120. (*Id.*) Plaintiff requests that the court reduce the subject property's 2014-15 real market value to $75,000 and its exception value to $0. He testified that he would have difficulty paying the increase tax assessment because he lost his job due to an injury. On behalf of Defendant, Young requested that the court sustain the 2014-15 real market value and exception value determined by BOPTA. She agreed to provide Plaintiff with contact information for the county tax collector, who could discuss payment plans and other options available to Plaintiff.

II. ANALYSIS

The issues before the court are the subject property's real market value and exception value for the 2014-15 tax year. The assessment date for the 2014-15 tax year was January 1, 2014. ORS 308.007; ORS 308.210.[2]

Plaintiff has the burden of proving his case by a preponderance of the evidence. *See* ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Plaintiff must "provide competent evidence of the [real market value] of [his] property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). Competent evidence "includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD 110300D at 7, WL 879285 (Mar 13, 2012).

A.    *Real Market Value*

Real market value is defined in ORS 308.205(1), which states

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

There are three approaches to real market value that must be considered: the sales comparison approach, the cost approach, and the income approach. *See* OAR 150-308.205-(A)(2). In a particular case, all three approaches may not be applicable; however, each approach "must be investigated for its merit." *Id.* Whether any one approach is more persuasive in a given case "is a question of fact to be determined by the court" based on the record before it. *Pacific Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979).

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

Plaintiff testified that the subject property's real market value was no more than $75,000 as of January 1, 2014. Plaintiff determined that real market value based on his 2001 purchase price of $50,000 and his reported improvement costs of no more than $20,000. The Oregon Supreme Court has held that "[a] recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). Plaintiff testified that he purchased the subject property in 2001. The court is not persuaded that a sale in 2001 was "recent" as of the January 1, 2014, assessment date. Plaintiff did not provide any other information about his purchase to help the court determine if it was a voluntary, arm's-length transaction. Plaintiff's real market value evidence is unpersuasive.

Even though the burden has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court * * *." ORS 305.412. Young's comparable sales indicated a real market value range of $126,000 to $160,000. She requested that the court sustain the 2014-15 real market value of $123,230 determined by BOPTA. Young made relatively large adjustments to her comparable sales. Large adjustments may indicate that the comparable sales selected are not truly comparable to the subject property. *See Agripac, Inc. v. Dept. of Rev.*, 11 OTR 371, 376 (1990) (reasoning that, "[i]f such large adjustments are required, one must conclude that either the method is faulty or the plants are not truly comparable. Such large adjustments make any comparisons unreliable."). The court finds that Young's real market value evidence is inconclusive.

///

B.      *Exception Value, Minor Construction*

As this court has previously explained, "[t]he term 'exception value' is a creature of Measure 50. It is not found in either the Constitution or statutes, but is a shorthand expression for the occasions triggering a calculation of the [maximum assessed value] for an account under an exception to the calculation rule of ORS 308.146(1)." *Douglas County Assessor v. Crawford*, 21 OTR 6, 7 (2012). "The 'exceptions' are found in ORS 308.146(3) and include * * * occasions when property is new property or improvements * * *." *Id.* The real market value of "new property or new improvements" is defined as the excess of the real market value of new improvements over the real market value of any retirements. ORS 308.153(2)(a). The real market value of new improvements is their incremental contribution to the real market value of the property as a whole; *i.e.*, it is "the increase in [real market value] of the remodeled property as opposed to the value of the improvements themselves." *Hoxie v. Dept. of Rev.*, 15 OTR 322, 326 (2001). Exception value does not include value increases due to factors such as inflation, changes in market demand, or changes in construction codes. *See id.*

Plaintiff does not dispute that he made the improvements to the subject property identified by Defendant. Rather, he contends that each of his four improvement projects cost less than $10,000 and were, therefore, "minor construction." Exception value does not include value resulting from "minor construction," defined as "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(5). The Oregon Department of Revenue's administrative rule on "minor construction" states, "[w]hen testing the over $25,000 threshold, use the cumulative [real market value] of all minor and major

/ / /

construction over a period not to exceed five consecutive assessment years." OAR 150-308.149(6)(3).

      1.     *Measuring period for new improvements*

Ordinarily, "new" improvements are those added between the assessment date of the tax year at issue and the assessment date of the prior tax year. *See Crawford*, 21 OTR at 11-12 ("all of the statutory provisions lead to the conclusion that the beginning point of the measuring period for a determination of what is 'new' is one year prior to the assessment date for the year in question."). For the 2014-15 tax year, "new" property or improvements are those added between January 1, 2013, and January 1, 2014. The "minor construction" exception requires the court to consider the cumulative real market value of new property or improvements made during the five year period preceding the assessment date of the current tax year. The measuring period for Plaintiff's new property or improvements is from January 1, 2009, to January 1, 2014.

Plaintiff did not testify regarding the dates that he completed his various projects. The receipts and invoices are dated from 2004 through 2011, indicating that Plaintiff purchased materials both before and during the applicable measuring period for minor construction. That evidence calls into question whether some improvements were made to the subject property prior to January 1, 2009, and therefore prior to the applicable measuring period for minor construction. However, absent additional testimony or evidence, the court finds that proof of the dates that materials were purchased is not persuasive evidence of when the improvements were actually made.

      2.     *Real market value of new improvements*

As noted above, the five-year real market value limit for "minor construction" is $25,000. The question, then, is whether Plaintiff proved by a preponderance of the evidence that the

cumulative real market value of new improvements to the subject property made during the five years preceding January 1, 2014, was $25,000 or less.

Plaintiff's evidence comprised four packets of receipts and invoices, dated from 2004 through 2011, totaling $17,077.66. As noted above, the cost approach is one of the three recognized approaches to determining real market value. "The cost approach is 'particularly useful in valuing new or nearly new improvements[.]'" *Magno v. Dept. of Rev.*, 19 OTR 51, 55 (2006) (internal citation omitted). Here, Plaintiff's cost evidence does not account for the cost of labor or the materials that Plaintiff obtained for free; it accounts only for the cost of materials purchased by Plaintiff.

> "It is commonplace to find an uninformed homeowner who disputes the county assessor's property valuation by seeking to prove only the owner's out-of-pocket expenses in the construction (producing invoices for all materials involved), only to find that the difference results from the fact that all or most of the necessary labor was contributed by the owner and his family, which the owner discounts completely."

*The Oregon Bank v. Dept. of Rev.*, 8 OTR 291, 301 (1980). "Cost consists of all the direct labor and materials and indirect expenditures required to complete the construction of a structure." *Id.* (internal quotation marks and citation omitted). The court finds that Plaintiff's cost evidence is incomplete and, therefore, unpersuasive of real market value.

III. CONCLUSION

After careful consideration of the testimony and evidence, the court finds that Plaintiff failed to prove by a preponderance of the evidence that the subject property's real market value was $75,000 as of January 1, 2014. The court further finds that Plaintiff failed to prove by a preponderance of the evidence that the new improvements made to the subject property as of January 1, 2014, constituted "minor construction" and should not, therefore, have been added as exception value for the 2014-15 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of November 2015.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on November 17, 2015.*