IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

GREGORY SCHECHTEL,              )
and ELVIRA SCHECHTEL,           )
                                )
            Plaintiffs,         )    TC-MD 170109R
      v.                        )
                                )
KLAMATH COUNTY ASSESSOR,        )
                                )
            Defendant.          )    **FINAL DECISION[1]**

Plaintiffs appeal a Board of Property Tax Appeals (BOPTA) Order, dated March 8, 2017, for real property identified as account R885006.[2] A trial was held on November 21, 2017, in the Oregon Tax Court, Salem, Oregon. Gregory Schechtel (Schechtel) appeared on behalf of Plaintiffs and testified. Elvira Schechtel testified on behalf of Plaintiffs. Nathan Bigby appeared on behalf of Defendant. Plaintiffs' Exhibits 1 to 12 were admitted into evidence without objection. Defendant's Exhibits A to D were admitted into evidence without objection.

## I. STATEMENT OF FACTS

The subject property is a single family home consisting of 4,243 square feet with four bedrooms, 3.1 baths on a one-acre, view lot in Klamath Falls. (Ptfs' Ex 3 at 1.) Defendant's county tax records set the real market value for the property for the 2016–17 tax year at $559,170 and the assessed value at $448,000. (Ptfs' Ex 3 at 5.) BOPTA lowered the real market value to $535,590 and sustained the assessed value. (Compl at 2.) Plaintiffs appeal that order.

/ / /

---

[1] This Final Decision incorporates the court's Decision, entered March 1, 2018, with the addition of the court's analysis regarding costs and disbursements in Section III.

[2] Plaintiffs appealed the 2015–16, 2016–17, and 2017–18 tax years. (Compl at 1.) The court issued an Order Dismissing Plaintiffs' Appeal of the 2015–16 and 2017–18 Tax Years on June 27, 2017. That order is incorporated into this decision.

Schechtel testified that in 2015 he engaged a real estate agent to look for a house near his spouse's job in the Klamath Falls area. The subject property had been on and off the market since May 2012, with listed prices ranging from $559,999 to $499,000. (Ptfs' Ex 3 at 9.) Schechtel viewed the subject property in December 2015 which was owner occupied and listed for $475,000. (*Id.*) Schechtel testified that he went back and forth negotiating with the seller over the sales price due to deferred maintenance of the property. He testified that he has some experience with real estate and believed there was at least $50,000 in necessary repairs. Plaintiffs presented pictures of the subject property showing scratched cabinets, stained kitchen surfaces, and decking in need of repair. (Ptfs' Ex 4.) Plaintiffs offered $400,000 for the subject property, which was verbally rejected. The parties eventually agreed on a price of $415,000, and the sale closed on January 15, 2016. Schechtel testified that he had no direct contact with the sellers but understood from their agent that they were selling to move to a horse property. He also understood that one seller was a physician at a local hospital. Schechtel testified that he believes Plaintiffs' purchase of the subject property represented an "arm's-length transaction" indicative of its real market value.

Plaintiffs presented an appraisal of the subject property, prepared "exclusively for mortgage financing" as of January 23, 2015, which indicated a value of $455,000. (Pfts' Ex 5 at 2, 4.) Plaintiffs presented several properties as evidence of comparable sales. The first property was a house next door that was built in the same year as the subject property. (*See* Ptfs' Ex 7.) That property has four bedrooms, two bathrooms, and a three-car garage, comprising 3,213 square feet. (*Id.* at 1, 4.) Schechtel testified that the finishes in that house were superior to the subject property and that the house was in better overall condition. That property sold on December 5, 2016 for $424,500. (*Id.* at 1.)

Plaintiffs' second comparable was a house two doors down from the subject property. (Ptfs' Ex 8.) Schechtel testified that it has the same, or perhaps a slightly better, view. That property consists of three bedrooms and two bathrooms, totaling 2,692 square feet. That property sold in August 2016 for $375,000. (*Id.* at 1.) The property previously sold in July 2014 for $335,000. (*Id.*at 1.)

In addition to comparable properties, Plaintiffs presented several examples of properties which would tend to show that Defendant's valuation was too high. First, Plaintiff presented a property about one mile from the subject property "as the crow flies." That property has four bedrooms and 3.1 bathrooms, totaling 3,958 square feet, which sold on August 31, 2016 for $465,000. (Ptfs' Ex 9 at 2.) Pictures of the property show a very contemporary and exceptionally designed house with views of Mt. Shasta. (*Id.* at 4–5.) Second, Plaintiff presented a property consisting of three bedrooms, three bathrooms, totaling 3,124 square feet, and featuring scenic views. (Ptfs' Ex 10 at 2.) Pictures presented tend to show a well maintained property. (*Id.* at 4–5.) That house sold for $391,000 in February 2017. (*Id.* at 2.) Third, Plaintiff presented a property down the street from the subject property. That house consists of four bedrooms, and 3.1 bathrooms, totaling 5,673 square feet, and featuring a view. (Ptfs' Ex 11 at 1.) Schechtel testified that this property is superior in every way to the subject property. That property sold in August 2017 for $565,000. (*Id.*) Schechtel noted that the property had cost $1 million to build, was on the market for approximately 10 years, and the price had been reduced from $975,000. (Ptfs' Ex 11 at 22.) Schechtel testified that length of time on the market and the amount sold show that higher end properties in the Klamath Falls area had not been appreciating well. Lastly, Plaintiffs presented evidence of a 10-bedroom, eight-bathroom house consisting of 7,000 square feet, which sold for $605,000 in April 2017. (Ptfs' Ex 12 at 1.) The property had

been on and off the market for almost seven years, with the asking price being reduced from $2.985 million. (Ptfs' 12 at 2.)

Elvira Schechtel testified that computations in Defendant's "Sales Comparison/Market Approach" were inaccurate. (Def's Ex B at 1.) For example, in comparing sale #1, Defendant adjusted for the size of the second floor by reducing the comparable property by $23,324 due to 426 extra square feet ($54.75 per square foot). However, for sale #2, Defendant adjusted for the size of the second floor by increasing the comparable property by $90,968 due to 214 less square feet ($425.08 per square foot). (*Id.*) The document also appears to adjust the subject property, directly, for view, land, and miscellaneous improvements. (*Id.*) Lastly, the document states that the real market value of the subject property is $527,850 but recommends that the real market value on the tax rolls be lowered to $534,320. (*Id.*)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2016–17 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC–MD 020869D, WL 21263620 at *2 (Or Tax M Div, Mar 26, 2003). Real market value is defined in ORS 308.205(1),[3] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). The sales comparison approach "may be used to value improved properties, vacant land, or land being

---

[3] References to the Oregon Revised Statutes (ORS) are to 2015.

considered as though vacant." *Chambers Management Corp. v. Lane County Assessor*, TC–MD 060354D, WL 1068455 at \*3 (Or Tax M Div, Apr 3, 2007) (citations omitted).  "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property.  *Richardson*, 2003 WL 21263620 at \*3.  "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used.  All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions.  When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition."  OAR 150– 308–0240(2)(c).

Plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence.  ORS 305.427.  "[I]t is not enough for a taxpayer to criticize a county's position.  Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002).  "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof \* \* \*."  *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).  The assessment date for the 2016–17 tax year is January 1, 2016.  ORS 308.007; ORS 308.210.

A.      *Plaintiffs' Purchase of the Subject Property*

Plaintiffs primarily rely upon their January 2016 purchase price of $415,000 as conclusive evidence of the real market value of the subject property.  "A recent sale of the property in question is important in determining its market value.  If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable

and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). "In the absence of data indicating that 'the price paid was out of line with other market data material, we believe [a recent sale] to be one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive.' " *Ernst Brothers Corp. v. Dept. of Rev.*, 320 Or 294, 300, 882 P2d 591 (1994) (citations omitted).

Under *Kem*, a sale of the subject property must be "recent." 267 Or at 114. Plaintiffs' purchase of the subject property closed on January 15, 2016. That sale date is recent with respect to the January 1, 2016, assessment date. The sale must also be a "voluntary, arm's length transaction." *Id*. Here, the voluntary nature of the sale is not disputed. Plaintiffs presented evidence that the property had been on the market since 2012 with prices as high as $559,000 and the last listing price at $475,000. The property appears to have been sufficiently marketed, and both parties were represented by real estate professionals in the sales transaction. Although the large reduction in the purchase price from the listing price is some evidence of potential deviant market behavior, Plaintiffs provided evidence of deferred maintenance to explain the lower price. The court is persuaded that Plaintiffs' purchase of the subject property met the "arm's-length transaction" requirement under ORS 308.205(1) and OAR 150-308-0240(2)(c).

B.     *Plaintiffs' Comparable Sales*

Plaintiffs presented two comparable property sales to show the value of the subject property. One sale was next door to the subject property and the other was two doors away. Both sales were relatively close to the assessment date. Plaintiffs also presented four additional properties to support the proposition that a buyer could purchase a superior property with the amount asserted by Defendant as the value for the subject property. Defendant argues that

Plaintiffs failed to make any adjustments to their comparable sales, and thus they cannot be used to value the subject property. On this point Defendant has the better argument. Plaintiffs identified a number of potential comparable sales but failed to make any adjustments to those sales for differences from the subject property as required by OAR 150-308-0240(2)(c). Plaintiffs' comparable sales evidence is therefore given no weight with respect to establishing a specific value for the subject property. However, the evidence about other recent sales does provide some support, albeit anecdotal, that the sale of the subject property is not out of line with the range of contemporaneous sales in the area.

Defendant decided not to present testimony, instead relying on Plaintiffs' perceived inadequate evidence and on its own sales comparison analysis. However, Elvira Schechtel provided testimony which tends to show Defendant's analysis contained errors. The court can readily see that Defendant's adjustments made directly to the subject property for view, land, and improvements are highly unusual. Additionally, Defendant's adjustments for differences in size appear to follow no set rule; the adjustments range from $54 per square foot to over $425 per square foot. No explanation was offered to clarify the differences. Defendant's report also has the perplexing conclusion that the real market value is $527,850 but their recommendation was to lower the real market value to $534,320. Without testimony to explain the anomalies, the court gives no weight to the conclusions contained in Defendant's sales comparison analysis. What remains as the only good evidence of the value of the subject property is the sales price paid by Plaintiffs in January 2016.

### III. COSTS AND DISBURSEMENTS

The Magistrate Division has discretionary authority under ORS 305.490(2) to award costs and disbursements to the prevailing party. *Wihtol I v. Dept. of Rev.,* 21 OTR 260, 267-68

(2013). Tax Court Rule – Magistrate Division (TCR–MD) 16 describes the procedure for a prevailing party to request costs and disbursements. As required under TCR–MD 16 C(1), Plaintiffs filed a Statement for Costs and Disbursements on March 14, 2018, requesting that the court award them costs and disbursements totaling $811.61. Plaintiffs' costs request consists of: $252 for the filing fee; $241.33 for printing and copying; $90.00 for charges by Defendant for obtaining two years of property ratio studies; $23.10 for postage; and $205.18 for lodging and meals to attend trial. Defendant did not file a timely response and neither party requested that the court schedule a hearing "to consider issues and evidence related to the request for costs and disbursements." TCR–MD 16 C(3).

In analyzing Plaintiffs' request for costs, the court first must decide whether they are the prevailing party. There is no question that Plaintiffs are the prevailing party in this matter. The next question is what costs and disbursements are potentially allowable. TCR-MD 16 A defines "costs and disbursements" as "reasonable and necessary expenses incurred in the prosecution or defense of an action other than for legal services, and include the filing fee; the statutory fees for witnesses; the necessary expense of copying of any public record, book, or document used as evidence in the trial; and any other expense specifically allowed by agreement, by these rules, by TCR [Tax Court Rule] 68 A(2), or by other rule or statute." Plaintiffs' request for their filing fee is specifically provided for in the rules and is allowed. Similarly, their request for printing and copying, obtaining public documents, and postage are provided for in the rules, appear reasonable, are supported by adequate evidence, and are allowed. Plaintiffs' request for lodging and meals, however, are generally thought of as trial expenses incidental to the litigation and are not "costs and disbursements" for which the court has the authority to award under ORS 305.490.

Therefore, the court awards the sum of $606.43 to Plaintiffs representing their reimbursable costs and disbursements.

IV. CONCLUSION

After carefully considering the testimony and documentary evidence presented, the court finds that the subject property's real market value was $415,000 for the 2016–17 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted.  Defendant shall correct the 2016–17 tax roll value of the property identified as Account R885006 to reflect a real market value of $415,000.

IT IS FURTHER DECIDED that Plaintiffs are awarded costs and disbursements in the amount of $606.43.

Dated this ____ day of March, 2018.


_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Davis and entered on March 30, 2018.*