IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| DAVID JOHN MEDNANSKY, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 230134N |
| | ) | |
| v. | ) | |
| | ) | |
| CURRY COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed the value of property identified as Account R11007 (subject property)

for the 2022-23 tax year. A trial was held on October 17, 2023, by remote means. Plaintiff

appeared and testified on his own behalf. Michael E. Fitzgerald, attorney, appeared on behalf of

Defendant. Assessor Kiley Wegner (Wegner) testified on behalf of Defendant. Plaintiff's

Exhibits 1 to 3 were received without objection. Defendant did not offer any exhibits, but

Plaintiff's Exhibit 2 contains Defendant's submission to the Board of Property Tax Appeals

(board) and Wegner testified concerning that submission.[1]

## I. STATEMENT OF FACTS

The subject property is an 1,872-square foot home built in 1975, situated on 5.94 acres.

(Ptf's Ex 2 at 4.) It was listed for sale in early 2021 with a second lot for a total of 7.18 acres and

an asking price of $495,000. (*Id.* at 1.) Plaintiff purchased the subject property and adjoining lot

for $400,000 in February 2021. (*Id.* at 4.) The 2021-22 tax roll real market value of the second

lot (Account R11068) was $113,260. (*Id.* at 2.) Plaintiff appealed the value of the second lot

---

[1] As described in the September 1, 2023, Order on Trial Date, Exhibit Exchange, and Discovery Sanctions, incorporated herein by reference, Defendant failed to comply with the original exhibit exchange deadlines. The court extended the original trial date but declined to extend Defendant's exhibit exchange deadline based on Plaintiff's objection to doing so.

and Defendant reduced its 2022-23 real market value to $19,240 in advance of the board hearing. (*Id.* at 14.)  That value was lower than Plaintiff anticipated, though he had not requested any specific value for the lot.  (*See id.*)  Plaintiff also appealed the subject property's 2022-23 value, requesting a real market value of $100,000 attributable solely to the land.  (*See id.* at 11.)  The subject property's 2022-23 tax roll real market value, sustained by the board, was $363,840. (Compl at 4.)  Its 2022-23 maximum assessed value was $277,840.  (*Id.*)

Plaintiff's primary focus is negative conditions impacting the subject property and diminishing its value: (1) the neighborhood is deteriorating and junk is piling up; (2) the county code department is unable or unwilling to address issues on neighboring properties, including junk, dangerous trees, and runoff; (3) the subject property house is "degraded and unrestored" with outdated and incurable electrical and plumbing systems; (4) a 30-foot set back under the applicable zone would make rebuilding the subject property challenging; Plaintiff alleges that was a "recent zoning change"; and (5) uncertainty exists with the subject property lot line due to a 1998 lot line adjustment and conflicting surveys.  (*See* Compl at 2-3, 8-11.)  His exhibits document those issues.  (*See* Ptf's Ex 1 at 2-17 (excerpt on "Oregon Drainage Law," photos of runoff damage, letter to code enforcement); *Id*. at 18-20 (logging damage and slash piles); *Id*. at 21-22 (inaccessible areas); *Id*. at 23 (setback requirement under current zoning); *Id*. at 24-25 (email to code enforcement and a quote for $6,700 to remove trees on neighboring property); *Id*. at 26-47 (excerpt on obsolescence and photos documenting condition issues); *Id*. at 48-50, 55-56 (photos and notes pertaining to neighborhood issues).)

Wegner completed a sales comparison approach for the board hearing.  (Ptf's Ex 2.)  She testified that she looked for comparable sales in the "central county" area and identified three, including the subject property.  Wegner's sale 2 sold for $547,000 in April 2022, and sale 3 sold

for $492,000 in September 2021. (*Id.* at 6-9.) She adjusted the sales for differences, finding the subject property sale price of $400,000 was supported. (*Id.* at 10.)

The parties disputed whether Plaintiff's purchase price for the subject property and adjoining lot reflected real market value. Plaintiff maintains that his purchase was not arm's-length because the realtor failed to follow through on promises; for instance, the slash piles were not cleaned up. (*See* Compl at 3.) He indicated that the subject property was in worse condition than he understood at the time he purchased it. Plaintiff also disputed Defendant's allocation of the purchase price between the two lots, noting the 2021-22 tax roll real market value of $113,260 assigned to the other lot and his subjective value of $100,000 for that lot. (*See* Compl at 2.) Defendant noted that its 2022-23 real market values for the subject property and adjoining lot total $383,080, which is less than Plaintiff's purchase price of $400,000.[2] Even if it had maintained the 2021-22 value of the adjoining lot ($113,260) and allocated the balance of the $400,000 purchase price to the subject property, the resulting value of $286,740 would exceed the subject property's maximum assessed value of $277,840.

Plaintiff noted that a nearby property on other side of Highway 101, closer to the ocean, pays only $300 more in tax than subject property despite having a better location and view, and a superior improvement. (*See* Ptf's Ex 1 at 51-52.) That property is a 2,641-square foot house built in 1976 and situated on 9.92 acres that sold for $750,000 in 2017. (*Id.* at 52.) Plaintiff requests a proportionate reduction in the subject property taxes based on that property.

Finally, Plaintiff alleged various errors with the board hearing process, including the composition of members and manner of their participation (remote vs. in-person), concluding that he "did not have a legitimate hearing." (*See* Compl at 2-3.)

---

[2] $363,840 for the subject property + $19,240 for the adjoining lot = $383,080.

DECISION  TC-MD 230134N                                                                3

## II. ANALYSIS

The primary issue before the court is the subject property's 2022-23 real market value. Plaintiff raised additional issues pertaining to the property taxes assessed relative to another property and the composition and proceeding of the board. "Real market value" is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).[3] The assessment date was January 1, 2022, for the 2022-23 tax year. ORS 308.007; ORS 308.210. As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." ORS 305.427; *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

A.      *Real Market Value*

Real market value "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). Three approaches to value must be considered but may not be applicable in every case: the cost approach; the sales comparison approach; and the income approach. Oregon Administrative Rule (OAR) 150-308-0240(2)(a). In addition to the three approaches to value, "a recent, voluntary, arm's length" sale of the subject property "is important in determining its market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973).

Here, Plaintiff's purchase of the subject property and an adjoining lot for $400,000 in February 2021, provides relevant evidence of the subject property's real market value as of January 1, 2022. The sale occurred 10 months before the assessment date, but neither party

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2021.

presented evidence that market conditions changed during that interval. The parties disagree on the allocation of the $400,000 price between the subject property and the other lot. However, under any reasonable allocation, Plaintiff is not aggrieved because the resulting real market value would still exceed the subject property's maximum assessed value.[4] *See* ORS 305.275(1)(a) (a person must be "aggrieved" to appeal to this court); *Paris v. Dept. of Rev.*, 19 OTR 519, 521-22 (2008) (to be aggrieved, reduction in real market value must reduce property tax liability).

Plaintiff suggests that his $400,000 purchase price is overstated due to numerous issues with the subject property itself and neighboring properties. Other than a $6,700 cost estimate for tree removal on a neighboring property, Plaintiff failed to present evidence of the value impact of those various issues. Thus, the court finds no basis to make any adjustment to the $400,000 price for condition and other issues. *See Linstrom v. Dept. of Rev.*, 24 OTR 223, 228-229 (2020) (declining to order change to property classification where no discernible impact on value); *see also Oldenburg v. Wasco County Assessor*, TC-MD 150145N, 2015 WL 4724813 (Or Tax M Div, Aug 10, 2015) (evidence inconclusive where no cost to cure presented).[5]

Defendant presented evidence under the sales comparison approach to support the subject property's roll value and the court received no other evidence under the three approaches to value. The court finds no basis to change the subject property's 2022-23 real market value.

B.     *Reduction in Property Taxes*

Plaintiff requests a reduction in the subject property's 2022-23 property taxes to be proportionate with a neighboring property that Plaintiff considers to be superior. Plaintiff's

---

[4] Neither party suggests that the 2022-23 real market value of the other lot should exceed $113,260.

[5] Plaintiff described some of the condition issues as "incurable" but, even with incurable physical deterioration, a depreciation adjustment is calculated. *See* Appraisal Institute, *The Appraisal of Real Estate* 247, 561, 576, 579-581 (15th ed 2020).

argument, although not entirely clear, appears to the court as based on uniformity.

Since the passage of Measure 50, property taxes are generally based on assessed value, which is the lesser of real market value or maximum assessed value, a concept created by Measure 50. *See* Or Const, Art XI, § 11(1)(a); ORS 308.146(2). Subject to certain exceptions not relevant here, maximum assessed value may not increase by more than three percent per year. Maximum assessed value is, "in one sense * * * somewhat artificial or arbitrary" and "may, over time, result in various degrees of nonuniformity in the property tax system." *Ellis v. Lorati*, 14 OTR 525, 535 (1999). For that reason, it is exempted "from complying with other constitutional provisions requiring uniformity * * *." *Id.* Plaintiff's request for a reduction in property taxes proportionate to a neighboring property must be denied.

C.      *Claims Relating to the Board*

Plaintiff raised additional issues with the composition and conduct of the board in its hearing on Plaintiff's petition.[6] This court has jurisdiction over "questions of law and fact arising under the tax laws of the state." ORS 305.410(1); *see also Sanok v. Grimes*, 294 Or 684, 662 P2d 693 (1983) (dismissing tort claims against assessor but allowing property tax claims to proceed, because claims arising under the tax laws must have some bearing on tax liability). This court hears appeals *de novo*, so proceedings before the board typically have no bearing on this court's determination of value. *See* ORS 305.425; *but see Shevtsov v. Dept. of Rev.*, TC 5441, 2024 WL 414118 at *4 (Or Tax, Feb 5, 2024) (court had jurisdiction to consider validity of board charge because it burdened the right of the taxpayer to seek a value reduction; thus, the question required resolution to decide the amount of the tax owed). Here, Plaintiff received an

---

[6] The county is responsible for appointing board members and paying for expenses associated with the board. ORS 309.020; ORS 309.022. The Oregon Department of Revenue approves training for board members and exercises general supervision over the statewide property tax system. ORS 309.022; ORS 306.115.

opportunity to litigate his property tax claims *de novo* before this court. Even if the court had jurisdiction over Plaintiff's claims relating to the board, Plaintiff has not identified any remedy or relief that this court could provide beyond the *de novo* hearing he received. The court dismisses Plaintiff's claims relating to the composition and conduct of the board.

## III.  CONCLUSION

Upon careful consideration, the court concludes that the subject property's 2022-23 real market value should be sustained. The court further concludes that Plaintiff's request for a 2022-23 property tax reduction due to lack of uniformity must be denied and his claims relating to the composition and conduct of the board must be dismissed. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Signed this _____ day of March 2024.

_____

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.***

***This document was signed by Presiding Magistrate Allison R. Boomer and entered on March 7, 2024.***